IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICKY ASHFORD, )
)
      Plaintiff, )
)
v. )  CASE NO. 2:25-CV-536-RAH-KFP
)
CREDIT ONE BANK, N.A., )
)
      Defendant. )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

On October 7, 2025, Defendant Credit One Bank, N.A. (Credit One) filed a Motion to Compel Arbitration and Dismiss Litigation. Doc.14. The Court ordered pro se Plaintiff Ricky Ashford to show cause why the case should not be stayed pending arbitration, and/or dismissed. Doc. 21. The matter has been fully briefed and is ripe for review. Upon consideration of the parties' filings and applicable caselaw, the undersigned recommends Credit One's Motion to Compel Arbitration be granted in part.

## I.    BACKGROUND

On July 17, 2025, Ashford filed this action against Credit One. Doc. 1. Ashford alleges that, in attempting to collect an outstanding debt, Credit One subjected Ashford "to a deluge of harassing, unwanted, and unlawful phone calls." *Id.* ¶ 10. Ashford alleges that such actions violated the Telephone Consumer Protection Act,[1] the Fair Debt Collection

---

[1] 47 U.S.C. § 227.

Practices Act,[2] the Truth in Caller ID Act,[3] and constituted tortious invasion of privacy. *Id.* at 3–5.

Credit One filed an answer, denying Ashford's legal claims. Doc. 7 at 1. Among other defenses, Credit One raised the defense that Ashford's "claims are subject to binding arbitration, pursuant to the arbitration agreement contained in the terms and conditions governing any credit card account issued by Credit One[.]" *Id.* at 3–4.

Two months later, during which time the parties had the opportunity to confer regarding a proposed scheduling order (*see* Doc. 9), Credit One filed this Motion to Compel Arbitration and Motion to Dismiss (Doc. 14). Ashford objected to the Motion, on the grounds that Credit One had not produced a signed contract showing that he agreed to arbitration. Doc. 22 at 2. Ashford further argued, even if such an agreement existed, it would be unconscionable and unenforceable because it "was presented on a take-it-or-leave-it basis with no opportunity to negotiate." *Id.* at 2. Alternatively, Ashford argued that Credit One waived their right to arbitrate by substantially participating in the litigation process before filing their Motion. *Id.* at 3. Ashford also filed his own Motion to Strike Arbitration (Doc. 20), in which he reiterates the arguments in his response brief to Credit One's Motion to Compel (Doc. 22).

## II.    APPLICABLE LAW

Section 3 of the Federal Arbitration Act (FAA) provides, when the Court is satisfied that an action is referable to arbitration under an arbitration agreement, the Court "shall on

---

[2] 15 U.S.C. § 1692 et seq.
[3] 47 U.S.C. § 227(e).

2

application of one of the parties stay the . . . action until such arbitration" takes place according to "the terms of the agreement." 9 U.S.C. § 3. Here, Credit One requested that the Court compel arbitration and dismiss the underlying claims (Doc. 14 at 1), or in the alternative, stay all matters pending arbitration (Doc. 15 at 1).

The Eleventh Circuit has upheld both dismissals and stays pending arbitration. *Compare Alton v. Direct Merchants Bank*, 2007 WL 1100477, at *6 (M.D. Ga.),[4] *aff'd*, 251 F. App'x 602 (11th Cir. 2007), *and Caley v. Gulfstream Aerospace Corp.*, 333 F.Supp.2d 1367, 1379 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005), *with Valiente v. Holiday CVS, LLC*, 2020 WL 2404701, at *2 (S.D. Fla. May 12, 2020) (concluding after an exhaustive review of Eleventh Circuit cases that they weigh in favor of a stay pending arbitration). Yet, the Eleventh Circuit appears to favor a stay as the better approach. *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("For arbitrable issues, the language of [the FAA] indicates that the stay is mandatory."); *Branch v. Ottinger*, 477 F. App'x 718, 721 (11th Cir. 2012) ("A district court is required to stay a pending suit when it is satisfied that only arbitrable issues remain."). Therefore, this Court will only review whether Ashford's claims are due to be dismissed if it concludes that those claims are not arbitrable.

## III.  DISCUSSION

Credit One argues that Ashford agreed to arbitrate any disputes between the parties by using Credit One credit cards. Doc. 15 at 7–8. Credit One states, when Ashford applied

---

[4] Here and elsewhere in this Opinion, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

for the cards, Credit One provided Ashford with disclosures explaining that his cards were subject to an arbitration agreement. *Id.* at 7. Credit One mailed Ashford the Card Agreements—which contained the full text of the arbitration agreement—along with his physical cards. *Id.* at 8. Credit One argues that Ashford accepted the arbitration agreement when he failed to opt out of arbitration. *Id.*

Credit One attests in a sworn declaration[5] that Ashford applied for two Credit One Credit cards, in 2020 and 2025, respectively. *Id.* at 1–2. Credit One produced a "true and correct copy" of the disclosures it provided Ashford when he submitted his credit card applications. *Id.* The disclosures warn Credit One customers that their "Card Agreement includes an arbitration provision," and that "[c]omplete details will be in the Card Agreement sent with [the] card." *Id.* at 5; *see id.* at 26. Credit One attests that it mailed copies of the Card Agreement with Ashford's credit cards, and he accepted its terms by using the cards. *Id.* at 1–2.

According to the Card Agreement, the arbitration agreement requires controversies and disputes with Credit One to "be submitted to mandatory, binding arbitration." *Id.* at 12. Covered claims include "any controversies or disputes arising from or relating in any way to [the Card] Account[;] . . . and, if permitted by the rules of the arbitration forum, any collection of debt related to [the Card] Account." *Id.* Customers accept the arbitration

---

[5] In order to establish a fact before the Court, a party may provide an affidavit, written and signed by the person attesting to the underlying information, that declares under penalty of perjury that the foregoing information is true and correct. 28 U.S.C. § 1746. In Credit One's declaration, Michael Wiese, a Vice President of Collections at Credit One, attested to his personal knowledge of the facts argued in Credit One's Motion. Doc. 15-1 at 1. Wiese's signed declaration contained the requisite language required by 28 U.S.C. § 1746.

agreement when they use their card and do not affirmatively reject the arbitration agreement. Doc. 15-1 at 8. Customers may reject the arbitration agreement if they provide Credit One with "written notice of rejection within 45 days after [the agreement] is first provided to [them]." *Id.* at 14.

In response, Ashford argues that no arbitration agreement exists because Credit One "has not produced a signed contract or electronic acceptance of arbitration," or "any proof of delivery or authenticated communication of arbitration terms." Doc. 22 at 2. Ashford also argues that the arbitration agreement is unconscionable and unenforceable because it was "hidden or mailed after account issuance," and "presented on a take-it-or-leave-it basis." *Id.* Ashford further argues that Credit One waived its right to arbitrate by "substantially participat[ing] in litigation before invoking arbitration." *Id.* at 3.

**A. The arbitration agreement between Ashford and Credit One is enforceable.**

Courts have upheld the FAA's strong policy in favor of arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Arbitration agreements are generally "valid, irrevocable, and enforceable," unless a plaintiff can show some legal or equitable ground to revoke the contract. 9 U.S.C. § 2. Courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether an arbitration agreement exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Federal courts hearing state law claims apply the choice of law rules of the forum state, *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007), therefore Alabama choice of law principles control here.

5

In contractual disputes governed by Alabama choice-of-law principles, courts largely uphold choice-of-law provisions. *Stoval v. Universal Const. Co., Inc.*, 893 So. 2d 1090, 1102 (Ala. 2004). According to the Card Agreement, the arbitration agreement is governed by the FAA and Nevada state law. Doc. 15-1 at 12. Therefore, the Court applies Nevada contract law to determine whether the arbitration agreement is enforceable. *Stoval*, 893 So. 2d at 1102.

In Nevada, whether a dispute is arbitrable is a question of contract interpretation. *Clark Cnty. Pub. Emps. Ass'n v. Pearson*, 798 P.2d 136, 137 (Nev. 1990). "As a matter of public policy, Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration." *State ex rel. Masto v. Second Jud. Dist. Ct. ex rel. Cnty. Washoe*, 199 P.3d 828, 832 (Nev. 2009). As such, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Ass'n Firefighters, Local No. 1285 v. City Las Vegas*, 764 P.2d 478, 480 (Nev. 1988). Nevada law compels "arbitration of particular grievances 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 481 (quoting *AT&T Techs., Inc. v. Commc'ns Workers Am.*, 475 U.S. 643, 650 (1986)).

The plain language in the disclosures and Card Agreement warned Ashford that the disputes here would be subject to arbitration unless he affirmatively rejected the arbitration agreement. "[W]hen a contract is clear on its face," Nevada law will construe the contract according to its plain language. *Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 603 (2005). The language in the disclosures and Card Agreement plainly state that

6

controversies and disputes between a customer and Credit One are to "be submitted to mandatory, binding arbitration." *See* Doc. 15-1 at 12. The disclosures clearly reference the Card Agreement (*Id.* at 5, 26), and the Card Agreement provides a multitude of issues that are covered by the arbitration requirement (*Id.* at 12).

Further, the issues raised in this action fall within the arbitration agreement. In his Complaint, Ashford alleges that Credit One engaged in illegal debt collection tactics. Doc. 1 at 3–5. Claims covered by the arbitration agreement include "any controversies or disputes arising from or relating in any way to [the Card] Account[;] . . . and, if permitted by the rules of the arbitration forum, any collection of debt related to [the Card] Account." Doc. 15-1 at 12. From the plain language in the arbitration agreement, allegations of illegal debt collection tactics would be covered. *Canfora*, 121 P.3d at 603. Allegations of wrongdoing are a form of "controvers[y] or dispute," and matters relating to debt collection are plainly listed as a covered claim. Doc. 15-1 at 12.

Moreover, Ashford has not pointed to a section of the arbitration clause that positively assures that these claims are not covered. *Firefighters*, 764 P.2d at 481. Even if the arbitration agreement did not explicitly list debt collection as a covered claim, Nevada law requires the Court to "resolve any doubts concerning the arbitrability of the subject matter of [the] dispute in favor of arbitration." *Id.* at 480. Because the arbitration agreement plainly covers "*any* controversies or disputes arising from or relating in any way to [the Card] Account,"[6] collection issues regarding those debts would be covered under Nevada

---

[6] Doc. 15-1 at 12 (emphasis added).

law. *Firefighters*, 764 P.2d at 480. Therefore, the Court must construe Ashford's allegations in favor of arbitration. *Masto*, 199 P.3d at 832.

      Ashford's assertion that the arbitration agreement is unenforceable because Credit One "has not produced any signed contract or electronic acceptance" (Doc. 22 at 6) does not avail, because neither are required here. The card agreement clearly states that customers accept the arbitration agreement when they use their card and do not affirmatively reject the arbitration agreement. Doc. 15-1 at 8. Ashford has not proved that he did not receive the disclosures or card agreement. Instead, he objects to the arbitration terms on the basis that they "were hidden or mailed after account issuance." Doc. 22 at 2. Nevada courts liberally construe arbitration agreements, even in cases where parties do not fully understand the implications of such agreements, and even when a contracting party does not "point out and fully explain an arbitration clause." *White v. Second Jud. Dist. Ct. for Cnty. Of Washoe*, 2024 WL 656484, at *1 (Nev. 2024) (quoting *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1059–60 (9th Cir. 2020)). Thus, the fact that Credit One attests to providing Ashford with written disclosures both electronically and by mail is enough to support that Ashford had notice about the arbitration agreement, and how to reject it. Credit One was not obligated to verify that Ashford was aware of the arbitration terms, or that he understood their implications. *White*, 2024 WL 656484 at *1.

      Finally, Ashford has failed to adequately allege that the arbitration agreement is unconscionable and unenforceable because he did not have the opportunity to negotiate over its terms. Doc. 22 at 2. Nevada law defines an adhesion contract as

> a standardized contract form offered . . . essentially on a 'take it or leave it'
> basis, without affording the consumer a realistic opportunity to bargain, and
> under such conditions that the consumer cannot obtain the desired product or
> service except by acquiescing to the form of the contract.

*Obstetrics & Gynecologists William G. Wixted, M.D., et al. v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985). Adhesion contracts are enforceable in Nevada when the weaker party to the agreement received "plain and clear notification of the terms," which fall within their reasonable expectations, and subsequently consented to the agreement. *Burch v. Second Jud. Dist. Ct. State ex rel. Cnty. Of Washoe*, 49 P.3d 647, 649 (Nev. 2002) (quoting *Pepper*, 693 P.2d at 1261). Courts only refuse to enforce adhesion contracts that are unduly oppressive, but the burden of proof thereof is exceedingly high. *Pepper*, 693 P.2d at 1260.

Here, Ashford would be considered the weaker party to the agreement, because he used Credit One's cards, and Credit One wrote the contracts governing those cards. The facts show that Ashford received "plain and clear notification of the terms" of the arbitration agreement, the terms were within a consumer's reasonable expectations, and Ashford consented by failing to reject the agreement. *Burch*, 49 P.3d at 649. Even though the arbitration agreement was provided on a "take it or leave it" basis, its terms were not unduly oppressive. *Pepper*, 693 P.2d at 1260. Even if Ashford believed that the terms were unduly oppressive, he could have rejected the agreement altogether and still would have been permitted to use the card. Doc. 15-1 at 8. Accordingly, Nevada law directs the Court to compel the current matter to arbitration. *Masto*, 199 P.3d at 832.

**B. Credit One did not waive its right to enforce the arbitration agreement.**

"Although arbitration agreements governed by the FAA are to be liberally enforced, courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011) (citations omitted). The Eleventh Circuit has concluded that courts—not arbitrators—decide whether a party has waived the right to arbitrate by engaging in litigation. *Grigsby & Assocs., Inc. v. M Secs. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011).

The Eleventh Circuit applies a two-part test for waiver: (1) given the totality of the circumstances, "the party has acted inconsistently with the arbitration right," and (2) such actions prejudiced the other party. *Krinsk*, 654 F.3d at 1200. Waiver happens when "the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz v. W. Eng. Ship Owners Mut. Protec. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995). "[T]he key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018). When both "the court and the opposing party have such notice at an early stage in litigation, they can manage the litigation with this contingency in mind." *Id.* The party seeking arbitration provides fair notice to the Court and the non-moving party by communicating affirmatively that they have arbitration rights and intend to use them. *See id.*

Here, Credit One "acted []consistently with the arbitration right." *Krinsk*, 654 F.3d at 1200. Although Credit One answered Ashford's Complaint, it raised binding arbitration

as a defense. Doc. 7 at 3–4. Therefore, both the Court and Ashford had fair notice of Credit One's position and its intent to exercise its rights. *Gutierrez*, 889 F.3d at 1236. Further, although the parties were ordered to confer and submit a scheduling order (Doc. 9), they did not engage in discovery and or file substantive motions preceding the Motion to Compel Arbitration (Doc. 14). The record hardly reflects that Credit One allowed Ashford "to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz*, 62 F.3d at 1366. Instead, the record shows that the parties had not discussed litigating this matter and were not engaging in litigation when the Motion to Compel was filed. Doc. 19.

Moreover, Ashford has not shown that he was prejudiced by Credit One's actions in this matter. Credit One filed this Motion to Compel Arbitration (Doc. 14) ten weeks after it was served process. *See* Doc. 6. In determining whether the party opposing arbitration has been prejudiced, courts "consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *Krinsk*, 654 F.3d at 1201. A show of prejudice requires showing that the non-moving party was seriously burdened by the moving party's indolence. *See Morewitz*, 62 F.3d at 1366. For example, a nine-month delay would be prejudicial. *Krinsk*, 654 F.3d at 1201. The non-moving party would be prejudiced if the moving party affirmatively states that it does not seek arbitration, then does so later. *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012).

Neither is the case here—instead, Credit One evidenced its right to compel arbitration in its timely answer (Doc. 7), then filed its Motion to Compel ten weeks after it

received service of process (*see* Doc. 6). A request to compel arbitration ten weeks after the right has accrued is timely and enforceable, and not prejudicial to the non-moving party. *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990). Accordingly, because Ashford had fair notice of Credit One's right to arbitrate this matter, and because Credit One did not invoke the litigation machinery to the point of prejudicing Ashford, Credit One did not waive its right to arbitrate this matter.

## IV.    CONCLUSION

Upon review of the parties' filings, the undersigned RECOMMENDS Defendant's Motion to Compel Arbitration and Dismiss Litigation (Doc. 14) be GRANTED as to the motion to compel arbitration and DENIED as to the motion to dismiss. The undersigned further RECOMMENDS:

1. This case be STAYED and closed for administrative purposes.

2. Within 14 days after arbitration proceedings have concluded, the parties file a joint status report with the Court.

It is further ORDERED that on or before **December 1, 2025**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo

determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. See 11th Cir. R. 3-1.

DONE this 17th day of November, 2025.

_____
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE